UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOP-CO INC. and TOP-CO CEMENTING PRODUCTS INC. | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. |
| vs. | § § | 4:13-cv-00445 |
| SUMMIT ENERGY SERVICES, INC. d/b/a SUMMIT CASING EQUIPMENT | § § § § | JURY TRIAL DEMANDED |
| Defendant. | § | |

## PLAINTIFFS' BRIEF ON CLAIM CONSTRUCTION

Plaintiffs Top-Co Inc. and Top-Co Cementing Products Inc. (collectively "Top-Co") hereby file this Brief on Claim Construction pursuant to the Court's June 20, 2013, Management Order [Doc. #33].

## INTRODUCTION

In the present lawsuit, Top-Co claims that Defendant Summit Energy Services, Inc. d/b/a Summit Casing Equipment ("Summit") is infringing U.S. Patent No. D664,568 ("the '568 patent"). The '568 patent, issued to Top-Co[1] on July 31, 2012, claims "[t]he ornamental design for a casing centralizer, as shown and described."  The '568 patent, attached hereto as **Exhibit A**, at p. 2. Following the claim in the '568 patent are 16 figures which illustrate the claimed design.

It is Top-Co's position, which is supported by applicable law, that a verbal construction of what is claimed by the '568 patent is not necessary in this case.  While the article (a centralizer) depicted in the '568 patent has a utilitarian purpose and some functional features, the ornamental design is not driven by functionality, any functional features may be designed in various ways with

---

[1] Top-Co Cementing Products, Inc. is the assignee of the '568 patent.  *See* the '568 patent at p. 1.

differing appearances, and the overall appearance of the design is protectable and should be the focus of any infringement analysis.

There are 16 Figures in the '568 patent that adequately depict the claimed design. It is appropriate in this case for the Court to defer to those figures in construing the claimed invention.

## APPLICABLE LAW

### A. DESIGN PATENTS

Article I, Section 8, Clause 8 of the United States Constitution provides, "The Congress shall have Power To…promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries…." U.S. Const. Art. I, Sec. 8, Cl. 8. Under this Clause, Congress is empowered, but not obligated, to create a patent system that grants to inventors the exclusive right to their discoveries. The current U.S. patent law implements this provision in the Constitution through sections 101 and 171 of Title 35 of the United States Code, which provide, respectively,

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title. 35 U.S.C. § 101.

> Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title. 35 U.S.C. § 171.

In general terms, section 101 of the Patent Act allows for the grant of a utility patent which protects the way an article is used and works, while section 171 of the Patent Act allows for the grant of a design patent which protects the way an article looks. Manual of Patent Examining Procedure ("MPEP"), § 1502.01. Under section 101, in order for a utility patent to be granted the

invention must be novel, useful and nonobvious, while under section 171, in order for a design patent to be granted the design must be novel, original and nonobvious.  35 U.S.C. §§ 101 and 171; *In re Garbo*, 287 F.2d 192, 193 (CCPA 1961) (*citing In re Frick*, 275 F.2d 741, 742 (CCPA 1960)).  However, since a design patent may only issue for articles of manufacture, as opposed to paintings, sculptures or other embodiments of ornamentation, the article that is the subject of the design patent must, by definition, have utilitarian aspects.  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("An article of manufacture necessarily serves a utilitarian purpose….").

Articles of manufacture may possess both functional and ornamental characteristics.  MPEP § 1502.01.  In a design patent, the subject matter which is claimed, and therefore protected, is the design embodied in or applied to an article of manufacture (or a portion thereof) and not the article itself.  MPEP § 1502.  "The acts of Congress which authorize the grant of patents for designs were plainly intended to give encouragement to the decorative arts."  *Gorham Co. v. White*, 81 U.S. 511, 524, 20 L.Ed. 731 (1871).  "They contemplate not so much utility as appearance, and that, not an abstract impression, or picture, but an aspect given to those objects mentioned in the acts."  *Id.*, 524-25.  The design for an article consists of the visual characteristics embodied in or applied to an article.  MPEP § 1502*; Gorham*, 81 U.S. at 525 ("And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form.")  The subject matter of a design patent may relate to the configuration or shape of an article, to the surface ornamentation applied to an article or to the combination of configuration and surface ornamentation.  MPEP § 1502.  Design is inseparable from the article to which it is applied and it must be a definite, preconceived thing, capable of reproduction and not merely the chance result

of a method.  *Id.*

### B. CLAIM CONSTRUCTION

Whether a design patent is infringed is determined first by construing the claim to the design, when appropriate, and then comparing it to the design of the accused device.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed.Cir. 1997).  Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent.  *Id.* at 1405.  However, the elements of the design may indeed serve a utilitarian purpose.  *L.A. Gear*, 988 F.3d at 1123.  The protection afforded by a design patent simply extends to the ornamental aspects of the invention and not its functionality.  *Id.*

A district court's decision regarding the level of detail to be used in describing the claimed design is a matter within the court's discretion.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc).  The court is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful.  *Id.*  "In addition, in deciding whether to attempt a verbal description of the claimed design, the court should recognize the risks entailed in such a description, such as the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole."  *Id.* at 679-80.

Design patents are claimed as shown in drawings and claim construction must be adapted to a pictorial setting.  *Crocs, Inc. v. Int'al Trade Comm'n*, 598 F.3d 1294, 1302 (Fed. Cir. 2010).  *See* 37 C.F.R. § 1.153 ("The claim shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described.  More than one claim is neither required nor permitted.")  Thus, an illustration depicts a design better than it could be by any description

and a description would probably not be intelligible without the illustration. *Id., citing Dobson v. Dornan*, 118 U.S. 10, 14, 6 S.Ct. 946, 30 L.Ed. 63 (1886); MPEP § 1503.01, ¶ 15.46.01 (Any description of the design in a design patent specification, other than a brief description of the drawing, is not necessary since, as a general rule, the illustration in the drawing views is its own best description.) *See also Egyptian Goddess, Inc.*, 543 at 679 ("[T]his court has not required that the trial court attempt to provide a detailed verbal description of the claimed design, as is typically done in the case of utility patents.)

Misplaced reliance on a detailed verbal description of the claimed design risks undue emphasis on particular features of the design rather than examination of the design as a whole. *Crocs*, 598 F.3d at 1302, *citing Egyptian Goddess, Inc.*, 543 at 679-80. "In many cases, the considerable effort in fashioning a detailed verbal description does not contribute enough to the infringement analysis to justify the endeavor." *Id.* "Depictions of the claimed design in words can easily distract from the proper infringement analysis or the ornamental patterns and drawings." *Id.* "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc.*, 543 F.3d at 679 (*emphasis added*).

### '568 CLAIM CONSTRUCTION

A. **CLAIM CONSTRUCTION**

Based on applicable law, the Court should not provide a verbal description of the design claimed in the '568 patent. The '568 patent contains 16 figures adequately depicting the claimed design. Thus, the Court should construe the claim in the '568 patent as "**a centralizer, with vanes or blades, of the design shown in Figures 1-16**." *See, e.g., Contessa Food Prods., Inc. v.*

*Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed.Cir. 2002) (rev'd on other grounds by *Egyptian Goddess, Inc.*, 543 F.3d at 676-78) ("The district court construed the claim of the…patent to include 'a tray of a certain design, as shown in Figures 4-5, containing shrimp arranged in a particular fashion, as shown in Figures 1-3.'")

### B. FUNCTIONALITY DOES NOT REQUIRE A VERBAL CLAIM CONSTRUCTION IN THIS CASE

Based on Summit's Response to Infringement Contentions filed on June 18, 2013 [Doc. #30] as well as arguments made in conference before this Court, Top-Co anticipates that Summit will argue that certain features of the patented design are functional and should be filtered out during claim construction. Top-Co disagrees with this contention.

In its Response to Infringement Contentions, Summit argues that "the casing centralizer design [in this case] includes functional and non-functional aspects of the design shown in the patent…." Doc. #30 at p. 8. Summit cites *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed.Cir. 2010), in support of its position that functional aspects of a design should be factored out as part of the claim construction process. *Id.* Summit argues that the patented design "by definition…is for a tool that has several functional components", including, according to Summit, the overall appearance of the cylindrical shape; vanes/blades protruding around the centralizer body; beveled, sloped or chamfered ends of the vanes; the direction and angular displacement of the fins/blades; the number of fins/blades; and the flat upper surface that contacts the bore hole. *Id.* at pp. 8-11. Summit's position exhibits a misunderstanding of the law and the facts of this case.

First, an article of manufacture is, by definition, functional. *L.A. Gear, Inc.*, 988 F.2d at 1123 ("An article of manufacture necessarily serves a utilitarian purpose…."). Functionality of the article or of certain components of the article does not necessarily prevent protection of the

6

ornamental design of those features. The elements of the design may indeed serve a utilitarian purpose, but the ornamental aspect is the basis of the design patent. *Id. See also Gorham*, 81 U.S. at 525 ("It is a new and original design for a manufacture, whether of metal or other material; … a new or original impression or ornament to be placed on any article of manufacture; … or a new and original shape or configuration of any article of manufacture-it is one or all of these that the law has in view. And the thing invented or produced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form.") Any functional features of the centralizer design at issue in this case have ornamental aspects that are protectable.

Second, unlike the article that is the subject of the design patent in the *Richardson* case, the features of the centralizer design at issue in this case are not driven by utility. *Id.*, 597 F.3d at 1294. In *Richardson*, the patented design was for a multi-function carpentry tool that combined a conventional hammer with a stud climbing tool and crowbar. *Id.* at 1290. *See* FIG. 1 from the *Richardson* patent, below.



The district court noted that "elements such as the handle, the hammerhead, the jaw and the crowbar are dictated by their functional purpose." *Id.* at 1294. The district court focused on the configuration of the tool as being functional and, therefore, not protectable. For example, "the jaw has to be located on the opposite end of the hammer head such that the tool can be used as a step. The crowbar, by definition, needs to be on the end of the longer handle such that it can reach into

narrow spaces.  The handle has to be the longest arm of the tool to allow for maximum leverage.  The hammer-head has to be flat on its end to effectively deliver force to the object being struck.  As demonstrated by the prior art, those are purely functional elements whose utility has been known and used in the art for well over a century."  *Id.*  After factoring out these functional elements, basically the configuration of the tool, the district court found that the overall visual effect of the accused device was not substantially similar to the *Richardson* tool and, therefore, did not infringe.  *See* Figure 1 of the accused device, below.[2]



Figure 1

Contrarily, with the exception of the cylindrical shape of the centralizer body, no other feature of the '568 centralizer design described by Summit as functional is driven purely by utility.[3]  Nor is the configuration of the centralizer design at issue dictated by function.  This is supported by the fact that the prior art contains various designs of these same components that achieve the same functionality.  *See LA Gear*, 988 F.2d at 1123 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose.")

The defendant in *L.A. Gear* made arguments similar to Summit's in this case, namely that each element comprising the design at issue has a utilitarian purpose.  *Id.* at 1123.  The design in *L.A. Gear* was for a women's athletic shoe.  The defendant in that case argued that "the delta wing

---

[2] It is important to note that the accused device in the *Richardson* case was also the subject of a design patent granted by the U.S. Patent & Trademark Office ("USPTO").  Thus, the USPTO had already determined that the accused device was patentable.

[3] Importantly, all other components listed by Summit as being functional relate to the centralizer vanes.

provides support for the foot and reinforces the shoelace eyelets; the mesh on the side of the shoe also provides support; the moustache at the back of the shoe provides cushioning for the Achilles tendon and reinforcement for the rear of the shoe; and the position of each of these elements on the shoe is due to its function." *Id.* However, the court found that "the utility of each of the various elements that comprise the design is not the relevant inquiry with respect to a design patent. In determining whether a design is primarily functional or primarily ornamental the claimed design is viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article." *Id.* "That elements … [of the design] such as the delta wing or the side mesh, also provide support for the foot does not mean that the specific design of each element, and the combination of these elements into the patented design, is dictated by primarily functional considerations. The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent. The district court remarked on the existence of a myriad of athletic shoe designs in which each of the functions identified by [the defendant] as performed by [the design] elements was achieved in a way other than by the design….When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose. *See Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1563, 7 USPQ2d 1548, 1553 (Fed.Cir.1988). It was not disputed that there were other ways of designing athletic shoes to perform the functions of the elements of [the patented design]." *Id.*

Similarly, while the vanes or blades protruding around the centralizer body serve the purpose of centralizing the casing in the well bore, there are many ways in which vanes may be designed and configured to achieve this purpose. As discussed in hearings before the Court, there

9

are centralizers that use bow springs attached to collars (similar in functionality to vanes on the outside of a sold body centralizer) to centralize tubing. In addition, vanes on a centralizer may be configured in various ways, such as straight, angled, a combination of straight and angled, full or partial-length along the centralizer body, etc. *See* Illustrations 1-5, below.



Ill. 1    Ill. 2    Ill. 3    Ill. 4    Ill. 5

Summit also lists in its Response to Infringement Contentions several purported prior art centralizers that have vanes designed differently than those depicted in the '568 patent. *See below* Summit prior art cited, Doc. #30 at p. 19.[4]



These variations in vane design and configuration support the fact that functionality does not dictate this element. Contrary to Summit's argument, for centralization to be achieved, the vanes or blades do not necessarily have to protrude around a centralizer body. Centralization may be

---

[4] Interestingly, the "new" Thornton '781 and "new" Charlton '949 prior art references cited by Summit as being "the closest prior art" actually depict centralizers that are <u>identical</u> to those in Thornton U.S. Patent Application Publication 20030164236 already considered of record by the USPTO Examiner and cited on the face of the '568 patent.

achieved with bow springs, vanes welded between two collars, or in various other ways. Contrary to Summit's argument, the ends of the vanes do not have to be beveled, sloped or chamfered. The ends of the vanes may be rounded, flat, sloped or shaped otherwise. Contrary to Summit's argument, the direction and angular displacement of the vanes or blades is not dictated by function. Vanes may be straight, angled left or right and at varying degrees, or a combination of straight and angled. Contrary to Summit's argument, the number of vanes or blades on a centralizer is not dictated by function. Centralizers may have any number of vanes, from two or more. Spacing between the vanes may be small or large, as shown in the prior art, and vane configuration varies among centralizers. Contrary to Summit's argument, there is no functional requirement that a flat upper surface of the vane must contact the bore hole. As an initial matter, Top-Co does not agree that the top of the vane depicted in the '568 patent is flat. However, the various centralizers on the market show that vane surfaces vary in design from rounded, curved, flat or beveled.

Finally, focusing on certain features of the patented design will detract from the overall appearance of the design, which is what is protected. Design patent infringement requires a showing that the accused design is substantially the same as the claimed design. *L.A. Gear*, 988 F.2d at 1124. The criterion is deception of the ordinary observer, such that one design would be confused with the other. *Id.* In conducting such analysis the patented design is viewed in its entirety, as it is claimed. *Id.* at 1125. The ultimate question requires determining whether the effect of the whole design is substantially the same. *Id.* Focusing on specific elements of the '568 patent design during claim construction will place undue emphasis on those elements and undermine an infringement analysis, which requires consideration of the design as a whole. *See Crocs*, 598 at 1303-04 ("This case shows the dangers of reliance on a detailed verbal claim construction. The claim construction focused on particular features of the [patent design] and led

11

the administrative judge and the Commission away from consideration of the design as a whole.…[T]he Commission placed undue emphasis on particular details of its written description of the patented design. Those details became a mistaken checklist for infringement. Without a view to the design as a whole, the Commission used minor differences between the patented design and the accused products to prevent a finding of infringement. In other words, the concentration on small differences in isolation distracted from the overall impression of the claimed ornamental features.")

Accordingly, any elements of the claimed design that have some functionality need not be factored out as those elements have ornamental aspects that are protectable.

### C. SCOPE OF THE CLAIM

The '568 patent depicts a centralizer with vanes set at a right-hand angle and Top-Co has accused Summit products with vanes set at a right-hand angle. However, the scope of the claimed design should include identical vanes set at alternate angles if the effect of the design "is the same to the eye." *Gorham*, 81 U.S. at 526. Because infringement is determined by considering the overall appearance of the design, the scope of the claim should not be limited such that competitors may make minor changes to the design in an effort to avoid infringement. *Crocs*, 598 F.3d at 1303 ("[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Payless Shoesource,* 998 F.2d at 991 (quoting *Litton Sys., Inc. v. Whirlpool,* 728 F.2d 1423, 1444 (Fed.Cir.1984)).

*See Gorham*, 81 U.S. at 526-27 ("We do not say that in determining whether two designs are substantially the same, differences in the lines, the configuration, or the modes by which the aspects they exhibit are not to be considered; but we think the controlling consideration is the resultant effect. Such was the opinion of Lord Chancellor Hatherly in *McCrea* v. *Holdsworth*.

That was a suit to restrain an infringement of a design for ornamenting a woven fabric. The defence [sic] was a denial that the design used by the defendants was the same as that to which the plaintiff was entitled. The ornament on both was, in part, a star, but on one it was turned in an opposite direction from that in the other; yet the effect of the ornament was the same to the eye. The Lord Chancellor held the important inquiry was whether there was any difference in the effect of the designs, not whether there were differences in the details of ornament. 'If,' said he, 'the designs are used in exactly the same manner, and have the same effect, or nearly the same effect, then, of course, the shifting, or turning round of a star, as in this particular case, cannot be allowed to protect the defendants from the consequences of the piracy.' This seems most reasonable, for, as we have said, it is the effect upon the eye which adds value to articles of trade or commerce. So in *Holdsworth* v. *McCrea*, Lord Westbury said, 'Now, in the case of those things in which the merit of the invention lies in the drawing, or in forms that can be copied, the appeal is to the eye, and the eye alone is the judge of the identity of the two things. Whether, therefore, there be piracy or not is referred to an unerring judge, namely, the eye, which takes the one figure and the other figure, and ascertains whether they are or are not the same.' …Plainly, it must be sameness of appearance, and mere difference of lines in the drawing or sketch, a greater or smaller number of lines, or slight variances in configuration, if sufficient to change the effect upon the eye, will not destroy the substantial identity. An engraving which has many lines may present to the eye the same picture, and to the mind the same idea or conception as another with much fewer lines. The design, however, would be the same.")

  Thus, the scope of the claim should include designs that are mirror images of the claimed design, such that the overall appearance and, therefore, the effect of the design to the eye is the same.

13

## **CONCLUSION**

For the foregoing reason, the Court should construe the claimed design as "**a centralizer, with vanes or blades, of the design shown in Figures 1-16**." Any elements which the Court deems functional should not be factored out since the design and configuration of the elements are not dictated by utility and there are multiple ways to design the components of a centralizer. In addition, the scope of the claim should encompass mirror images of the claimed design which have the same overall appearance and effect of the design to the eye of the ordinary observer.

Respectfully submitted,

**DRY & TASSIN, P.L.L.C.**

By: */s/ Kristin K. Tassin*
**Kristin K. Tassin**
Attorney-In-Charge
Federal Bar No. 20522
State Bar No. 00797539
850 Saint Elmo's Court
Missouri City, Texas 77459
Telephone: (281) 685-2885
Facsimile: (713) 583-1064

**Gordon G. Waggett**
TX Bar No. 20651700
Fed. Bar No. 3214
**ADAIR & MYERS, P.L.L.C.**
3120 Southwest Freeway, Suite 320
Houston, Texas 77098
Tel: 713.961.4641
Fax: 713.522.3322

**ATTORNEYS FOR PLAINTIFFS**
**TOP-CO INC. AND TOP-CO CEMENTING PRODUCTS INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 10th day of July, 2013, with a copy of the foregoing Plaintiffs' Brief on Claim Construction via the Court's CM/ECF system in compliance with Local Rule 5.1.

*/s/ Kristin K. Tassin*
Kristin K. Tassin